

737 BOLIVAR ROAD, SUITE 4400 | CLEVELAND, OHIO 44115
(216) 241-0700 | FAX (216) 241-0739 | HABERPOLK.COM

EEOC
CLDO-CART UNIT
JUL 08 2013
**RECEIVED**

E-MAIL AKABAT@HABERPOLK.COM
DIRECT DIAL (216) 325-0106

April 29, 2013

## Position Statement of Respondent, Toyota of Bedford

Via Hand Delivery

Cynthia Stankiewicz
EEOC - Cleveland Field Office
AJC Federal Building
1240 E. 9th Street, Suite 3001
Cleveland, Ohio 44199

**RECEIVED**
APR 29 2013
EEOC-CLFO

RE:  Claimant: James E. McFall
Charge Nos.: 532-2012-01822 and 532-2013-01000
HPK File No.: 1421.021

Dear Ms. Stankiewicz:

On behalf of the Respondent, Toyota of Bedford, please accept our Position Statement with respect to the Charges of Discrimination filed by James E. McFall. At the outset, Toyota of Bedford adamantly, and unequivocally, denies that Mr. McFall was subject to any type of discrimination, harassment or retaliation. On the contrary, the evidence reveals that Mr. McFall was given every opportunity to succeed, and continue his employment, with Toyota of Bedford. Unfortunately, there came a point in time when Mr. McFall decided, on his own, that he no longer wished to carry out his job duties and responsibilities. Since that time, Mr. McFall has used the pending EEOC claims as a weapon in an effort to maintain his job, while completely disregarding the rules that govern all employees of Toyota of Bedford, and his obligations to his employer, and the customers. In the end, Toyota of Bedford was simply left with no choice but to terminate Mr. McFall, not based upon his age, any disability/medical condition or in retaliation, but rather because of his own intentional misconduct.

The assertions made by Mr. McFall in an effort to support his Charges of Discrimination are simply untrue and unsupported. Specifically, Toyota of Bedford states the following:

<u>Claim No. 532-2012-01822</u>

I. Mr. McFall was not denied a promotion as alleged.

In late spring/early summer 2012, Toyota of Bedford advertised an open position for Service Appointment Coordinator. Mr. McFall <u>did not</u> apply for, or express interest in, the position until <u>after</u> a qualified candidate was hired. After the candidate was hired, Mr. McFall

Cynthia Stankiewicz
April 29, 2013
Page 2

approached Jack Flynn and advised of his interest in the position. Mr. Flynn responded by indicating that the position had been filled; a true and accurate statement.

II. Mr. McFall's age, or potential for retirement, had absolutely no bearing on the hiring decision.

Once again, Mr. McFall never applied for the open position until after it was filled. There was, however, frequent discussion about Mr. McFall's potential, or planned retirement. Importantly, the conversations were always initiated by Mr. McFall. Mr. McFall constantly walked throughout the premises, and advised anyone who would listen, that he wanted to retire and enjoy his life. After Mr. McFall approached Mr. Flynn about the Service Appointment Coordinator position, and after Mr. Flynn advised Mr. McFall that the position had already been filled, Mr. Flynn did state, words to the effect, "I thought you intended on retiring soon anyway." At no point in time did Mr. McFall express any objection, or indicate that he was offended. Rather, the conversation was consistent with each and every prior conversation, initiated by Mr. McFall.

Mr. McFall also relays a conversation he had with Gary Dalton in July 2012. A group of people, including Mr. Dalton and Mr. McFall, were present at work while a discussion took place about retirement. Again, Mr. McFall indicated that he wanted to retire, but was unable to do so immediately because his ex-wife had taken most of his money. Mr. Dalton responded by stating that Mr. McFall should be able to enjoy his golden years. Once again, Mr. McFall did not indicate that he was offended by the discussion, and he certainly did not objection. On the contrary, Mr. McFall continued to discuss the issue with others.

III. Mr. McFall indicates that his work schedule was changed in July 2012.

It is true that the schedule for all of the service porters was changed due to concerns about overtime. Mr. McFall was asked to work one late night during the week, every Thursday. Mr. McFall objected because Thursday night was his bowling night. In light of Mr. McFall's objection, and in an effort to be considerate, Toyota of Bedford determined that Mr. McFall could maintain his original job schedule.

IV. Mr. McFall correctly points out that he did not receive holiday pay for Independence Day.

Pursuant to Policy 8.03 of the Toyota of Bedford Employee Handbook, only full time employees are eligible for holiday pay. Mr. McFall was not a full time employee and thus he did not receive holiday pay, consistent with every other part time employee.

### Charge No. 532-2013-01000

I. Mr. McFall is not disabled.

Toyota of Bedford has not received any information whatsoever, from any source, to even suggest that Mr. McFall has a disability. Over the course of his employment, Mr. McFall has had several absences due to various medical issues. His last leave of absence arose as a result of heart problems. Mr. McFall was on leave from November 16, 2012 through December 21, 2012. He returned to work, pursuant to a physician's note, without any restrictions whatsoever. Moreover, neither Mr. McFall, nor his physicians, requested any accommodations so that Mr. McFall could perform his job as service porter.

MCFALL 606

It is interesting, however, to note that Mr. McFall brazenly determined that he would avoid work as much as possible despite a physician's note that he was capable to returning to work. Specifically, Mr. McFall worked on December 22 and December 26-29. He thereafter requested, and received, vacation days from January 2 – January 5. Mr. McFall then called in sick on January 9, January 10, January 12 and then left early on January 16 and January 18. This was not the first time that Mr. McFall had issues with his attendance. Mr. McFall received a Counseling Report based upon his attendance in January 2009 and September 2012.

II. Shortly after Mr. McFall returned to work, he was involved in an incident with a customer that exemplified his total disregard for his work obligations and responsibilities.

Mr. McFall's conduct was inexcusable and damaging to the business reputation of Toyota of Bedford. If any other service porter had acted in a similar manner, regardless of their age, they too would have been terminated.

On January 25, 2013, Mr. McFall was asked to remove the snow from a rental car that had been pulled inside the service bay for a customer. Mr. McFall was handed a snowbrush, but refused to complete the task, stating that the brush was too small for the vehicle. Mr. McFall indicated, in the presence of the customer, that he would not clean the car off unless someone gave him a bigger snowbrush. Shortly thereafter, the customer became angry and grabbed the snowbrush from Mr. McFall. The customer then began to clean the car off herself. The customer left the dealership that day, indicating that she was appalled by Mr. McFall's behavior.

Mr. McFall's conduct was in direct conflict with the policies and procedures that govern his employment. Specifically, each employee is advised that they should gain the respect and loyalty of the customers with honesty, fairness and friendly, courteous, forthright service. As well, each employee is advised of the need to be honest, dependable and ethical in what they say and do and to deal with customers with integrity. Each employee is advised that any failure to accomplish these important obligations can lead to immediate termination. Mr. McFall's employment was terminated because he failed to treat Toyota of Bedford's customers in a fair, friendly and courteous manner. Mr. McFall displayed a very clear disdain for his obligations in that regard. Mr. McFall's termination had absolutely nothing to do with his age, any perceived disability, or retaliation.

Mr. McFall states in his Charge that Anthony Trivisonno, another service porter, 20 years old, was also "involved" in the incident with the customer. This statement is blatantly false. Mr. Trivisonno became involved only after Mr. McFall refused to remove the snow from the vehicle and after the customer took the snowbrush from Mr. McFall and began to clean the rental car. At that time, another supervisor noticed what was occurring, and requested that Mr. Trivisonno secure another brush so that he could help the customer with the vehicle. At no point did Mr. Trivisonno participate in the incident wherein Mr. McFall refused to clean the vehicle for the customer.

Consistent with the EEOC Request for General Employment Information, please note the following:

1. Current Employment Application – see enclosed.

Cynthia Stankiewicz
April 29, 2013
Page 4

2. As part of the employment screening process, Toyota of Bedford performs a criminal background check, and secures a motor vehicle report, social security verification and previous employer verification.

3. Mandatory arbitration policy – see enclosed.

4. Documents which govern employee conduct – see enclosed excerpts from Employee Handbook.

5. EEO-1 Report – see enclosed.

6. Retention of medical information – all medical information for employees is maintained in a separate file in a separate cabinet, which is in a locked office.

7-9. N/A – Mr. McFall voluntarily decided not to take advantage of the company health insurance plan.

Based upon the foregoing, Toyota of Bedford respectfully requests that the EEOC dismiss Mr. McFall's Charges of Discrimination. Toyota of Bedford remains ready, willing and able to provide any further information requested by the EEOC in furtherance of its investigation.

Very truly yours,

Andrew A. Kabat

AAK/cd
Enclosure

MCFALL 608