UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| James McFall, | ) | CASE NO. 1:15 CV 1170 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Motorcars Acquisition IV, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court upon Defendant Motorcars Acquisition IV, LLC's Motion for Summary Judgment (Doc. 15). This case arises out of plaintiff's former employment with defendant. For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART.

**FACTS**

**1. Plaintiff's work performance**

Plaintiff began working at Defendant Motorcars Acquisition IV, LLC, d/b/a Toyota of Bedford, as a service porter in 2002. (Amended Complaint at ¶ 16). Service porters are assigned to handle a variety of tasks around the dealership, such as moving cars, bringing cars in and out

1

for customers, cleaning snow off of cars, restocking items in the service area, sweeping, and mopping. (Dalton Dep. at 12).

Gary Dalton was plaintiff's manager from May 1, 2012, through the end of plaintiff's employment in January of 2013. Dalton testified that plaintiff's performance as a porter was "below par" and "lackluster." (Dalton Dep. at 9, 13). While most porters would race to meet customers, plaintiff frequently finished his conversation before eventually making his way to greet the customer. (*Id.* at 12-13). Twice, Dalton observed plaintiff sleeping on the job when he should have been working. (*Id.* at 9-10). On both occasions, Dalton gave Plaintiff a verbal warning. (*Id.* at 10-11).

Plaintiff also received two written warnings for his conduct. One, in 2009, was for consistent tardiness following numerous verbal warnings. (Pl.'s Mot. for Summ. J., Ex. A). The other, on September 26, 2012, was for failing to call his manager when he was absent from work for three consecutive days. (*Id.*, Ex. B). Both of these written warnings stated that subsequent performance issues could result in further discipline, up to and including termination. (*Id.*).

**2. Discussions regarding plaintiff's age and retirement**

From time to time, plaintiff talked with co-workers at the dealership about retiring. He sometimes initiated these conversations but does not recall how often they occurred or exactly what he said. (*Id.* at 14-17). Dalton states that plaintiff told him more than once that he wanted to retire and enjoy his life. (Dalton Dep. at 31-32).

Plaintiff recalls one conversation in late June or early July of 2012 where Dalton initiated the discussion of plaintiff's retirement, stating that he would "see to it" that plaintiff retired upon his 70th birthday:

2

> Q. Okay. Let's start with the age component. What facts do you have to support your belief that your employment with Toyota of Bedford was terminated because of your age?
>
> ***
>
> A. Okay. The statement that was made by Gary Dalton.
>
> Q. Which was what?
>
> A. That I was going to retire and he was going to see to it. And the reason I say that is because there was a driver by the name of Ivan that worked at Mercedes. And I came over -- he picked up mail or whatever he did. But along the way, he would pick up the money for the lottery. And he told me that he wouldn't be able to come over like he had done in the past. He gave me the name of a person to give the money to. And he said he wouldn't be able to come over because they took away his driving privileges. And I said why. And he said, "Because I turned 80." And I said, "Well, I'll be 70 in a couple of months. I wonder what's going to happen with me," not knowing that Mr. Dalton was in earshot, so-to-speak. He came over and said, "And that's when you're going to retire, and I'm going to see to it."

(McFall Dep. at 7-8). Plaintiff also recalls Dalton stating sometime afterward that he wanted to make sure that plaintiff "enjoyed [his] retirement." (*Id.* at 12).

### 3. Plaintiff's termination

Plaintiff was terminated on January 30, 2013. At the time, he was 70 years old.[1] The termination notice that plaintiff received stated that the termination resulted from an incident involving a customer:

> On Friday, January 25, 2013 James refused to clean snow off of a rental car that had been pulled inside for a customer. Dave Placko asked James to clean the car and when James was handed the snow brush he stated that the brush was too small and made no attempt to clean off the car. The customer became irritated and grabbed the snow brush and cleaned the car off herself. The customer stated that James did not offer to help clean off the car or apologize for the inconvenience.

---

[1] Plaintiff turned 70 in August of 2012.

3

(*Id.*, Ex. D). Before terminating plaintiff, Dalton interviewed two dealership employees who had witnessed the incident, Dave Placko and Anthony Trivisonno, and the customer involved, Brenda Simmons. (Dalton Dep. at 20). The parties agree that Dalton was the "primary employee involved in the decision" to terminate. (Def.'s Mot. for Summ. J. at 16, Pl.'s Br. In Opp. at 4, 6).

Defendant's Employee Handbook states that employees can be subject to disciplinary action, up to and including termination, for "[i]nsubordination, failure or refusal to perform reasonably assigned work or to comply with proper instructions given by an immediate supervisor or others in a position of authority, or other disrespectful conduct." (Pl.'s Mot. for Summ. J., Ex. G). Plaintiff had not read the handbook, but he acknowledged that insubordinate and disrespectful conduct were reasonable grounds for termination. (McFall Dep. at 54-55).

Plaintiff does not dispute that he told Placko that the brush was too small, that he did not directly offer to help the customer brush off the car, or that he did not apologize to the customer. (McFall Dep. at 67-69). But he states that the reason he did not brush off the car is that he intended to get better equipment because the brush that Placko had given him was insufficient for the amount of snow and ice on the car:

> I told Dave there's no way possible I can get this snow off there. And I assume the customer was waiting inside to take that loaner car, because it had sat outside overnight. The car was frozen solid. And the idea was to bring the car inside, park it under the heaters, and then take the necessary equipment and start cleaning the car off. That was my appeal to him. I said, 'I cannot clean this car off with this. Let me go get what I need' – I didn't understand why he was giving me a brush that small. So while I was standing there, I had no idea that the customer was there, because normally the customer is inside. She jerked the brush out of my hand.

(McFall Dep. at 61-62). Plaintiff states that this was consistent with past practices at the dealership. He cites the testimony of Jack Flynn, defendant's prior Service Manager, who stated

4

that porters had the discretion to determine which type of brush to use in cleaning a car based on the volume of snow and ice. (Flynn Dep. at 13-14)

### 4. Plaintiff's EEOC charges

On September 19, 2012, plaintiff initiated a charge with the Equal Employment Opportunity Commission, alleging that defendant had denied him a promotion on the basis of age. The EEOC notified defendant of the charge on October 2, 2012. Defendant's Human Resources manager, Farrah Board, testified that, normally, an EEOC notice is addressed to the store and then the department manager or the general manager gives it to her. She then notifies an area vice president and the corporate office of the notice and conducts an investigation. In this case, the notification was addressed directly to Board. Board does not recall if she spoke with any of plaintiff's managers about the notice before she contacted counsel. Dalton testified that he did not know about plaintiff's EEOC charge before plaintiff's termination.

On March 7, 2013, plaintiff filed a second charge with the EEOC, alleging, among other things, that defendant terminated him based on his age and in retaliation for his previous EEOC charge.

Plaintiff thereafter filed his complaint in this Court. He originally brought four claims: age discrimination in violation of the Age Discrimination in Employment Act (ADEA), retaliation based on age discrimination in violation of the ADEA, disability discrimination, and intentional infliction of emotional distress. Defendants moved for summary judgment on all four claims. In his brief in opposition, plaintiff voluntarily dismisses his disability discrimination and intentional infliction of emotional distress claims. (Pl.'s Br. in Opp. at 2). In addition, although he alleged both failure to promote and unlawful termination as the basis for his ADEA claim in

5

his complaint, he has abandoned his failure to promote claim by failing to respond to defendant's arguments regarding this issue. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Thus, the only remaining claims are plaintiff's ADEA discrimination claim based on his termination and his retaliation claim.

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact

6

exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is

7

"merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

**1. Age Discrimination**

The ADEA prohibits an employer from terminating an employee because of the employee's age. 29 U.S.C. §623(a)(1). To establish a claim of age discrimination, a plaintiff may produce either direct evidence of discrimination or circumstantial evidence that would support an inference of discrimination. *Weeks v. Michigan Dept. of Comm. Health*, 587 Fed. Appx. 850, 855 (6th Cir. 2014). Here, plaintiff argues that he has both direct and circumstantial evidence that his termination was based on his age.

"Direct evidence is evidence that requires the conclusion, without any inference, that unlawful discrimination was at least a motivating factor in an employer's actions." *Douglas v. Eaton Corp.*, 577 Fed. Appx. 520, 523 n.1 (6th Cir. 2014). In a direct evidence case, the burden-shifting framework used under Title VII does not apply. In other words, once an employee produces direct evidence of discrimination, the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age. *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009). Rather, when a plaintiff bases an ADEA claim on direct evidence, his or her burden is to prove "by a preponderance of the evidence ... that age was the 'but-for' cause of the challenged employer decision." *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2351 (2009)).

The Sixth Circuit uses four factors to evaluate whether statements allegedly showing an employer's age bias constitute direct evidence of discrimination:

> (1) whether the statements were made by a decision-maker or by an agent with in the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Skelton v. Sara Lee Corp.*, 249 Fed. Appx. 450, 455 (6th Cir. 2007) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002)). No one factor is dispositive; "they must be evaluated as a whole, taking all of the circumstances into account." *Peters*, 285 F.3d at 477-78.

Plaintiff offers one statement as direct evidence of discrimination: Dalton's statement that he would "see to it" that plaintiff retired at age 70. In evaluating whether this comment constitutes direct evidence, the Court finds the Sixth Circuit's decision in *Hale v. ABF Freight System, Inc.* 503 Fed. Appx. 323 (6th Cir. 2012), instructive. There, the plaintiff offered several comments by his direct supervisor as direct evidence of the supervisor's age bias. The court rejected all but one of these comments. The comment that it found to constitute direct evidence was the supervisor's statement that "[plaintiff] is going to leave here when he is 62. I am going to see to it. He has been here long enough, and he is going to go on his social security." In reversing the district court's decision that this comment did not constitute direct evidence, the court noted that it was made by the plaintiff's direct supervisor, that the statement clearly connected the plaintiff's age to the supervisor's decision to terminate him, and that the supervisor did, in fact, terminate him. *Id.* at 331. The fact that the supervisor "unequivocally link[ed]" the plaintiff's age to her decision to terminate him was central to the court's holding. *Id.* at 332. It noted that, had the supervisor "simply inquired into [plaintiff's] retirement status or stated that [plaintiff] had been at ABF 'long enough' without any attendant reference to his age," the case may have come out differently. *Id.* But because the supervisor's "alleged statement

9

show[ed] that her decision was based not on an age-correlated factor but on age itself," it was direct evidence of discrimination.

Viewing the evidence in a light most favorable to plaintiff, Dalton's alleged statement is direct evidence of discrimination. Indeed, the statement is nearly identical to the supervisor's statement in *Hale*. As in *Hale*, Dalton unequivocally linked plaintiff's age with his decision to "see to it" that plaintiff retired. If believed, the statement "requires the conclusion, without any inference, that unlawful discrimination was at least a motivating factor" in Dalton's decision to terminate plaintiff. *Douglas*, 577 Fed. Appx. at 523 n.1. If Dalton had merely stated–as defendant contended in its opening brief–"I thought you intended to retire soon," such a statement would be insufficient to constitute direct evidence of discrimination because it does not unequivocally link plaintiff's age to the decision to terminate him.[2] But, on a motion for summary judgment, the Court must view the facts in a light most favorable to plaintiff, and according to plaintiff, Dalton's statement clearly connected the decision to make sure that

---

[2] All of the cases that defendant relies on to argue that Dalton's statement does not constitute direct evidence of discrimination involve statements that did not directly connect the plaintiff's age to the decision to terminate. (*See* Def.'s Reply Br. at 3-4) (citing *Scott v. Potter*, 182 Fed. Appx. 521, 526 (6th Cir. 2006) (finding the statement "why don't you retire and make everyone happy" did not constitute direct evidence of age discrimination); *Scheick v. Tecumsah Public Schools*, 766 F.3d 523 (6' Cir. 2014) (decisionmaker's statement during plaintiffs performance review that "the Board wants you to retire" was not direct evidence as it required an inference to conclude that retirement was a proxy for age); *Lee v. The Cleveland Clinic Foundation*, Case No. L15-CV-91, 2016 WL 29226 (N.D. Ohio Jan. 4, 2016) (supervisor's repeated inquiries regarding plaintiff's retirement and comments that time was passing plaintiff by were not direct evidence of age discrimination)).

plaintiff "retired" to his age.[3]

Moreover, there is no dispute that the statement at issue was made by a decision-maker; Dalton was plaintiff's supervisor and was the primary employee involved in the decision to terminate plaintiff. Although the statement occurred several months prior to plaintiff's termination, Dalton did, in fact, terminate plaintiff when he was 70 (five months after he had turned 70). Moreover, the Court notes that in *Hale*, the plaintiff did not produce any evidence of when the statement at issue was made. While Dalton's statement was arguably isolated–plaintiff cites to only one other statement by Dalton relating to his retirement–it was neither vague nor ambiguous. As discussed, Dalton's comment specifically connected plaintiff's age to the time when Dalton would "see to it"–i.e., force–plaintiff into retiring.

Plaintiff also argues that he has circumstantial evidence of discrimination. When a plaintiff relies on circumstantial evidence, he must proceed using the well-settled burden-shifting framework. Plaintiff bears the initial burden of establishing a prima facie case, which requires him to prove that: (1) he was a member of the protected class, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and 4) he was replaced by someone significantly younger or a similarly situated younger employee was treated more favorably. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008).

Once the plaintiff satisfies the prima facie case, the burden of production shifts to the

---

[3] Certainly, at trial, defendant can argue that Dalton had no discriminatory bias in making the statement and that he merely meant that he would make sure plaintiff was able to enjoy his retirement in accordance with plaintiff's own wishes. Again, though, in ruling on a motion for summary judgment, the Court must view the evidence in plaintiff's favor.

11

defendant to proffer a legitimate, nondiscriminatory reason for the adverse decision. If the defendant does so, the burden then shifts to plaintiff to show that the stated reason is a pretext for discrimination.  *Carroll v. Ohio Dept. of Admin. Servs.*, 555 Fed. Appx. 512 (6th Cir. 2014) (citations omitted).

Here, plaintiff's prima facie case fails on the fourth factor. He produces no evidence that he was replaced with a significantly younger employee, nor does he show that defendant precluded his efforts at discovering this information. Indeed, as defendant points out, plaintiff never even asked Dalton who, if anyone, replaced him. He also produces no evidence that a similarly situated younger employee was treated more favorably than him. Plaintiff vaguely claims that he "declared under penalty of perjury that another porter, in his twenties, was involved in the incident that led to [his] termination and that the other porter escaped discipline," but he cites no evidence to show that the younger porter was similarly situated to him. That is, there is nothing to show that the younger porter also refused a supervisor's request to clean off the customer's car. Thus, plaintiff's ADEA discrimination claim fails to the extent it is based on circumstantial evidence.

Because plaintiff has produced direct evidence of age discrimination, defendant's motion for summary judgment on his ADEA discrimination claim is denied.

**2. Retaliation**

Retaliation claims may also be supported by either direct or circumstantial evidence. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). Plaintiff relies on circumstantial evidence, so the burden-shifting framework discussed above applies to his claim. To establish his prima facie case, plaintiff must prove that: (1) he engaged in protected activity when he made

his age discrimination complaint; (2) defendant knew about his exercise of the protected activity; (3) defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010). The remaining two steps are the same as those discussed above in the context of plaintiff's ADEA discrimination claim, *i.e.,* defendant must proffer a legitimate business reason for the adverse decision, and then plaintiff must show that the stated reason is a pretext for retaliation.

Defendant argues that plaintiff cannot meet his prima facie case because he cannot prove that Dalton knew about his EEOC charge or that there was a causal connection between the protected activity and the adverse employment action. The Court agrees that plaintiff cannot meet his prima facie case because there is no evidence that Dalton was aware of plaintiff's EEOC charge prior to plaintiff's termination. Plaintiff relies on Board's testimony about the usual process for EEOC charges to argue that Dalton must have had knowledge of the charge. According to Board, the usual process was that notice of the charge would be "addressed to the store, **not to me**, and then the department manager or the general manager would give it to me." (Board Dep. at 13) (emphasis added). In this case, however, the notice was addressed directly to Board, and she did not recall if she discussed the notice with any of plaintiff's managers. In addition, Dalton testified that he had no knowledge of plaintiff's EEOC charge before plaintiff was terminated. (Dalton Dep. at 19).

As to the causal connection, defendant contends that plaintiff's only evidence of a causal connection is temporal proximity and that, by itself, such evidence is insufficient. The Sixth Circuit has explained that "[w]here an adverse employment action occurs very close in time after

an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). In *Mickey,* the court noted that it had held in an earlier decision that "the mere fact" that a plaintiff was discharged four months after filing a discrimination claim was insufficient to support an inference of retaliation. *Id.* (quoting *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986)). It explained, however, that "[t]hat language does not preclude plaintiffs from ever using a temporal proximity closer than four months to establish an inference of retaliation." *Id.*

Even assuming that Dalton had notice of plaintiff's EEOC charge, plaintiff cannot establish a causal connection. The notice was sent to defendant on October 2, 2012, and Dalton terminated plaintiff four months later on January 30, 2013. Because Dalton did not terminate plaintiff "very close in time" to when defendant received the EEOC charge, plaintiff must produce some other evidence of retaliatory conduct to establish a causal connection. Plaintiff attempts to do so by arguing that the circumstances surrounding his termination were "unusual." First, he notes that his tenure as a porter was longer than normal, that he had never filed an EEOC charge before, and that defendant did not terminate him until after he filed a charge. This argument simply comes back to the fact that Dalton terminated plaintiff several months after defendant received plaintiff's EEOC charge and does nothing to couple temporal proximity with other evidence of retaliatory conduct.

Next, plaintiff points out that Dalton could only recall defendant terminating one other porter, and that was only after the porter had damaged two cars in two days. Plaintiff also cites his former supervisor's testimony, Jack Flynn, who stated that he had never terminated an employee without first giving the employee a written warning and that he had only ever terminated an employee without first suspending the employee in instances in which the employee stopped showing up for work. Again, this evidence is insufficient to show a causal connection because the record is undisputed that plaintiff *had* been given two written warnings regarding his conduct, both of which stated that subsequent performance issues could result in further discipline, up to and including termination. Additionally, Board testified that defendant had, in fact, fired employees without warning for incidents involving insubordination–which was the basis for plaintiff's termination. Plaintiff produces nothing to dispute this testimony. (Board Dep. at 10).

For these reasons, defendant is entitled to summary judgment on plaintiff's retaliation claim because he cannot establish his prima facie case.

**CONCLUSION**

For the foregoing reasons, Defendant Motorcars Acquisition IV, LLC's Motion for Summary Judgment (Doc. 15) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims for disability discrimination and intentional infliction of emotional distress are voluntarily dismissed, and defendant is entitled to summary judgment on plaintiff's retaliation claim under the ADEA. Defendant's motion is denied with respect to plaintiff's discrimination claim under the ADEA.

IT IS SO ORDERED.

          /s/ Patricia A. Gaughan
          PATRICIA A. GAUGHAN
          United States District Judge

Dated: 5/20/16